SIEGMUND H. LEVIN & others *vs.* AARON B. VANNEVAR
& others.

Suffolk.    March 28. — Sept. 5, 1884.    DEVENS & COLBURN, JJ., absent.

In an action against an accommodation indorser of a promissory note, made to his order by A. for the purpose of being delivered to B. in payment of the amount due B. from A. under a written agreement of dissolution of a partnership between them, the defence to which is that the execution· of the agreement and the delivery of the note to B. were induced by false representations by him, contained in a written statement of the affairs of the firm, evidence of the circumstances attending the dissolution, and of the negotiations, including conversations between A. and B., which resulted in the written agreement, is admissible.

At the trial of an action upon a promissory note, given by A. to B. in payment of an amount due under a written agreement of dissolution of a partnership between them, the defence was that the agreement was made and the note delivered upon false representations by B. as to the affairs of the firm.  A. testified, on cross-examination by the plaintiff, that he brought a suit against B. and employed counsel to enter the suit at once, but through some neglect it was not entered for a year.  He was then asked, for the purpose of showing that the suit was not brought in good faith, whether he had given his counsel directions to press the suit; and whether he had made any efforts to bring the suit to a speedy termination.  *Held*, that it was within the discretion of the judge to reject these questions, to the exercise of which no exception lay.

W. ALLEN, J.    This is an action by the indorsees of a promissory note made by one Rauck, payable to the order of the defendants, and by them indorsed in blank for the accommodation of Rauck, for the purpose of being delivered by him to one Darrow in part payment of the amount due to him from Rauck under an agreement of dissolution of copartnership between them.

At the trial, the plaintiffs put in an auditor's report in their favor, and rested their case.    The defendants, to prove that the agreement was made and the note delivered to Darrow upon fraudulent representations by him of the amount due to him, as well as that the note was delivered to Darrow without consideration, called Rauck as a witness, who testified, in his examination in chief, that the partnership was dissolved on August 17, 1878, by a written agreement.    The agreement was put in evidence by the plaintiffs, a copy of a part of which is as follows: " The said Isaac W. Rauck to-day to pass over to said Marcus

H. Darrow certain bills payable with cash as agreed to cover $7200, which amount has been arranged between above-mentioned parties (as per statement of the affairs of the concern, as stated in writing by said Marcus H. Darrow, who has had entire charge and control of the books of the concern). Isaac W. Rauck on the one part to receive from Marcus H. Darrow a full statement, as per above, legally drawn, and Marcus H. Darrow on the other part to receive a paper releasing him from all liabilities to date." Rauck also testified that Darrow at that time made a statement in writing of the affairs of the concern (which was put in evidence by the defendants); that Darrow was the bookkeeper, and had general charge of the office work and books; and that the witness had nothing to do with the books, and had no knowledge in regard to them except what Darrow told him.

On cross-examination, the witness testified that he and Darrow had frequently discussed the question of dissolution prior to August 17, 1878, and that the proposition fixing the amount and terms was first made by Darrow on August 7, 1878; that, on that day, they had a general conversation, during which Darrow handed to him the written statement which was in evidence, and said that he had gone over the books quite a number of times, and did not believe the amount due him from the books on the settlement of accounts would vary from the statement more than $100; and that, on being questioned by the witness how he arrived at the estimate of the amount, Darrow said that he had made averages in that way in previous years which were nearly correct, and that, by paying that amount, they could arrange the terms, and a final settlement of the books would show whether he was correct in his figures or not. There was much more testimony given by Rauck, but the above abstract seems all that is necessary to the question we are coming to, and is the substance of the evidence in the case, when the defendant closed his case, to prove representations which had been made by Darrow, and that Rauck was induced by them to make the agreement.

The plaintiffs, in reply, called Darrow, and asked him to " state the circumstances under which he dissolved with said Rauck, beginning with the date when the matter was first

broached." The court excluded the question, and all negotiations which resulted in the written agreement; and the plaintiffs excepted.

We understand this to be a ruling that any conversation between Rauck and Darrow prior to the time of the execution of the agreement was incompetent, and to have been intended to exclude the testimony of Darrow in regard to the interview of August 7, testified to by Rauck on cross-examination. This is in accordance with the ruling immediately following, which excluded the question to Darrow whether he had made any proposition touching a dissolution prior to the written agreement.

The ground upon which the defendants attempt to sustain these rulings is, that the evidence offered was immaterial by itself, and that the testimony of Rauck which it would bear upon was immaterial matter introduced by the plaintiffs on cross-examination. The argument for the defendants is, that they did not put in evidence, or rely upon any verbal representations, but only upon the representations contained in the written agreement, and the statement in writing which they claimed accompanied it, and that the evidence of verbal representations was incompetent and immaterial.

But, even upon this ground, the testimony of Rauck on cross-examination, that the written statement was made and delivered to him ten days before the agreement was executed, was clearly material as showing, if true, that the written representation of the state of the accounts upon which the defendants relied was made before the agreement, and the plaintiffs had a right to the testimony of Darrow as to that transaction. But the verbal representations testified to by Rauck in cross-examination were competent and material, if not necessary, evidence for the defendants. They had a right to rely upon it, and did not deny or disclaim it. The evidence went to the jury as part of the case, and the defendants had, and claimed, the advantage of it. The words in their prayer for instructions, which was given, "any statement of the affairs of the concern or any representation made by Darrow, which statement or representation was false," include the verbal representation, evidence of which was before the jury.

But we think that the ruling was wrong for other reasons than that it excluded evidence as to material conversations and facts testified to on cross-examination by Rauck. It was necessary for the defendants to prove that Rauck was induced to make the contract and deliver the note by representations made by Darrow.

The circumstances attending the dissolution and the negotiations which led to the agreement are apparently material as showing what other information the defendants had in regard to the subject matter of the representations, and what other inducements led them to enter into the agreement. The ruling was general, excluding all evidence of negotiations which resulted in the written agreement, and the plaintiffs properly submitted to it without stating in detail the evidence they offered.

One other exception was taken by the plaintiffs to the exclusion of evidence. Rauck, on cross-examination by the plaintiffs' counsel, testified that he brought a suit against Darrow; that he employed counsel in March, 1879, to enter the suit at once, but, through some neglect, it was not entered for a year. He was further asked, for the purpose of showing that the suit was not brought in good faith, whether he had given his counsel directions to press the suit; and whether he had made any efforts to bring that suit to a speedy termination. These questions were all within the discretion of the court to admit or reject; and the exceptions to their rejection must be overruled. *Exceptions sustained.*

*S. H. Tyng,* for the plaintiffs.

*R. Stone,* for the defendants.