IN RE DONGES'S ESTATE.

*June 3 — June 22, 1899.*

*Wills: Construction: Provision for after-born children: Remainders: Bequests by implication: Costs:. Attorneys' fees: Executors and administrators.*

1. The comprehensive and all-dominating rule in construing wills is that the intention of the testator must be ascertained from the words thereof, in the light of all surrounding circumstances, and that intention be given effect. In case of doubt such construction should be adopted as will support and give effect to the will rather than defeat it, and as will tend to a complete distribution of his estate rather than one which will result in intestacy as to any part.

2. A testator, being childless, but his wife being then pregnant, made his will, containing, among other provisions, a devise to his wife of all the real estate of which he died seised, to have and to hold the same until the youngest child, if any be born, attained the age of twenty-one years, and in case no children were living at his death, to his wife, unless she remarried. He also bequeathed legacies to his sisters, to whom he was under moral if not contractual obligations for services rendered to the amounts of the several bequests, and made such legacies specific charges on part of his real estate. Two children born after the making of the will survived him. The widow elected not to take the provisions given her by the will. On application for construction of the will, *held:*

(1) That the testator had in mind the intention that, upon the majority of the youngest of his after-born children, his real estate, meanwhile devised to his widow, should pass to his children, and that the failure to so declare was merely an omission to express an intention fully present in the mind of the testator.

(2) That it is the duty of the court to declare and effectuate such intention, and to supply the ellipsis or omission of testator by adding to that paragraph of the will the words, "and then to my said children."

(3) That by the will itself testator devised his realty to his children on the majority of the youngest.

3. The devise to testator's two children of a remainder in his real estate upon the majority of the youngest constitutes a *provision* for them within the meaning of sec. 2286, R. S. 1878. The estate should therefore be assigned and distributed according to the terms of the will,

In re Donges's Estate.

subject to such modifications as resulted from the widow's election to take by law, and not under the will.

4. The right and liability of litigants as to taxable costs, and the amount thereof, is wholly statutory, and to authorize the court to allow or apportion costs it is necessary that a specific provision of statute giving such authority should exist.

5. It is a settled rule of construction, in this state, that under sec. 2949, Stats. 1898, in cases involving the probate or construction of wills, a discretion rests in the supreme court to allow or withhold *taxable* costs, or to authorize their payment out of the estate; and where a contest in such actions is entirely justifiable and presents questions of law worthy of consideration, it is proper that the *taxable* costs of both parties in the supreme court should be ordered paid out of the estate.

6. In such cases the costs in the circuit court must be governed by the discretion of *that* court, under sec. 2918, Stats. 1898, as to who shall recover costs, not exceeding those taxable under the fee bill, and as to whether the recovery shall be of the whole or only part of such taxable costs, which discretion is controlled in some measure by sec. 2932, Stats. 1898, requiring that any costs taxed against an executor shall be collected out of the estate unless the court shall direct them to be paid by him personally for mismanagement or bad faith.

7. In such cases the *taxable* costs in county court are controlled by sec. 4041, Stats. 1898, in applying which the county court is in some measure restrained by sec. 2932, Stats. 1898, which applies to all courts.

8. The supreme court will not attempt to direct in advance the discretion, thus vested in the circuit and county courts, though it is subject to review, if abused.

9. The allowance and ordering payment out of an estate, or from one party to another, of expenses not taxable by statute, such as general counsel fees and the like, is without authority of law and should not longer be indulged in; but the cases and extent in which one party, or any fund, should be required to contribute to the expenses of another, in litigation, must be limited by the cost statutes and the fees therein prescribed, except as to counsel fees and other expenses reasonably incurred by an executor or any other trustee in the performance in good faith of his duties.

10. Courts should be cautious in allowing attorneys' fees for services ostensibly rendered to executors, but in spirit and effect rendered to one of the opposing interests of the respective claimants upon the estate, and in such case each litigant should bear the expenses of litigation which he has incurred.

In re Donges's Estate.

APPEAL from a judgment of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge. *Reversed.*

On April 11, 1890, Charles Donges, being childless, but his wife then being pregnant, made and executed his will, with the following material provisions: "First. After my just debts and funeral expenses are paid, I give and bequeath to my beloved wife, Clara Donges, all the real estate of which I may die seised, together with the rents, income, and profits thereof; to have and to hold the same until the youngest of my children, if any be born me, shall attain the age of twenty-one years. Second. In case there are no children living at the time of my decease, my said wife shall be the sole owner of my real estate. Third. In case my said wife shall intermarry again, she shall only have her dower interest in my property. Fourth. The household property my wife shall hold absolutely." Fifth was a bequest of $1,000 to each of four sisters, to be paid one year after decease, and charged upon an undivided half interest in a specified parcel of real estate. Seventh and eighth bequeathed the undivided half interest in the business of Donges Bros., to testator's brother and partner, *Jacob Donges,* with the proviso that, in case of the death of *Jacob* before testator, the same should be divided among "my wife and children." Ninth, in case of the death of the wife without issue, all property bequeathed to her should go to *Jacob.*

*Jacob Donges* survived the testator, as also the wife, Clara, and two children,—*Ella,* born July 24, 1890, and *Anita,* born December 29, 1893. Testator's estate consisted of a share in two or three parcels of real estate, the interest in the firm of Donges Bros., and practically no other personal property. The widow duly elected to take her rights by law, and not by the will. It was shown by extrinsic evidence that probability of children was upon testator's mind at and before the execution of the will; also, that he considered himself under a moral, if not a contractual, pecuniary obli-

gation to his sisters to about the amount of their legacies in the fifth paragraph, for services rendered. Upon petition of the children for construction of the will the county court, and on appeal the circuit court, considered that no provision was made for them, and that it did not appear by the will that the testator intended that no provision should be made, and accordingly adjudged that they were entitled to the same shares as if no will had been made, which resulted in complete abrogation of the will, so that they were entitled each to one third of all personal property, and each to one half of all real estate subject to the mother's dower. The sisters, legatees under the fifth provision of the will, prosecute this appeal.

For the appellants there was a brief by *Quarles, Spence & Quarles*, and oral argument by *W. C. Quarles*.

For the respondents there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas*, and oral argument by *F. C. Winkler*.

DODGE, J. Sec. 2286, R. S. 1878, is, by its terms, to take effect and confer upon an after-born child the share which he would have had in the event of intestacy when the parent, by his will, makes no provision for such child, unless it is also apparent by the will that he intended to make no provision for him. The first question is, therefore, whether or not provision is made for the two respondents, both born after the making of their father's will, at which time he had no children.

The comprehensive and all-dominating rule in construing wills is that the intention of the testator must be ascertained from the words thereof, in the light of all surrounding circumstances, and that intention be given effect. To accomplish this, multitudinous minor rules have been announced, more or less technical, which, however, serve not so much to restrict or constrain the judicial mind as simply to guide

and to indicate probabilities in the absence of countervailing considerations.   None of them are to be followed blindly if they lead to subversion of what was clearly the intention of the testator.   Among these, two are relevant to the present consideration: first, that in case of doubt such construction will be adopted as to support and give effect to the will, rather than to defeat it; second, that a testator is presumed to have intended a complete distribution of his estate, and a construction tending to that end will be preferred to one which results in intestacy as to any part. *Mann v. Hyde,* 71 Mich. 278; *Given v. Hilton,* 95 U. S. 591, 594.  In the carrying out of this latter rule courts often find themselves constrained to discover an intention to give, by the will, that which is not in fact given by express words, but which, it is clear from the other bequests and devises, it was the intention of the testator to give, as being so clearly implied from the gifts in fact made and the purpose of the will that silence can signify only an omission to state that which was in the testator's mind and intended.   These are called devises or bequests by implication.   Mr. Schouler (Wills, § 561) states the general rule: "A devise will be raised by implication under a will where the context requires it, and the devise is not in express terms;" and, after a few illustrations, sums up the subject as follows: "In short, a gift by implication may be presumed wherever the conclusion is irresistible that the testator so intended it."

The will before us contains this language: "I give and bequeath to my wife, Clara Donges, all the real estate of which I may die seised; to have and to hold the same until the youngest of my children, if any be born to me, shall attain the age of twenty-one years.  In case there are no children living at the time of my decease, my said wife shall be the sole owner of my real estate."  The question arises at once, What was the intention of the testator as to his real estate if children were born to him and living at the time of

his decease, after the youngest attained twenty-one years of age? Did he or did he not have any intention on the subject when he made his will? To answer this question we may be aided by an examination of the conclusions reached by courts in cases of greater or less similarity. *Peat v. Powell*, 1 Eden, 479; *Hale v. Beck*, 2 Eden, 229; *Atkinson v. Paice*, 1 Brown, Ch. 91; *Goodright v. Hoskins*, 9 East, 306; *Ex parte Rogers*, 2 Madd. 449; *Tomkins v. Tomkins*, cited in 1 Burrows, 234; *Gardiner v. Stevens*, 30 Law J. Ch. 199; *Wilks v. Williams*, 2 Johns. & H. 125; *Tyson v. Blake*, 22 N. Y. 558; *Low v. Harmony*, 72 N. Y. 408; *In re Moore's Estate*, 152 N. Y. 602; *Ramsay v. De Remer*, 65 Hun, 212; *Robinson v. Greene*, 14 R. I. 181, 190; *Bentley v. Kaufman*, 12 Phila. 435; *Eldred v. Shaw*, 112 Mich. 237; *New England T. Co. v. Pitkin*, 163 Mass. 506; *Baker v. McLeod's Estate*, 79 Wis. 534, 543.

*Peat v. Powell:* Gift was in trust for son till he attained twenty-one, and then trust should cease. The words, " and then to my son and his heirs," were interpolated by implication. *Hale v. Beck:* Gift in trust to pay interest to the plaintiff, an infant, until she came to the age of twenty-one years. Court implied a bequest to plaintiff absolutely after twenty-one. *Atkinson v Paice:* The bequest was " in trust to J. F. L. till he comes of age." *Held*, that absolute bequest after majority would be implied. *Goodright v. Hoskins:* Bequest to son Richard until his son Thomas attained the age of twenty-one years, and no longer; but, in case said Thomas die in minority, then remainder to others. *Held* an implication of a bequest to Thomas upon his attaining majority. *Gardiner v. Stevens:* Property bequeathed in trust for A. and B. till B. is twenty-five years old. In case of death of A. and B. before that time, then over to others. Court held an implication raised that A. and B. should take the remainder when B. attained the age of twenty-five years. *Ex parte Rogers:* Bequest in trust for married niece A., to

In re Donges's Estate.

pay her interest, independently of her husband, during her life, and upon her decease without issue to pay over to others. *Held* that, having children, they took the principal of the legacy by necessary implication. *Low v. Harmony:* Bequest to A. for life, and, in case she die without issue, then to testator's other heirs. A bequest to her children, if she have any, raised by implication. *In re Moore's Estate:* Estate for life to testator's two sons and the survivor. After the death of the two sons and their heirs, if they have any, bequest over to others. Court implied "heirs" to mean "heirs of the body," and that, being such, they took the fee. *Ramsay v. De Remer:* Bequest to granddaughter Nellie, and, in case she shall die without issue, then over to others. Bequest to issue raised by implication, the court saying: "While it is not expressly so stated in the will, the plain implication is that the testator intended the property in question should be held and enjoyed by the plaintiff and her issue. Where the intent can be clearly collected from the writing it is the duty of the court to give effect to that intent, provided no rule of law is thereby violated; and devises by implication will be upheld where no gift of the property is made in formal language." *Baker v. McLeod's Estate:* Bequest was of the whole estate in trust for an only daughter, an infant, to pay over rents and profits or principal as trustee should deem for the advantage of the daughter, and all the principal to be paid to her when she should attain the age of twenty-one years, and upon her death under the age of twenty-one years the estate was bequeathed to others. The court held that the plain intent of the testator justified the addition of the words "without issue" to the contingency of her death a minor, and that, she having died in her minority, but leaving issue, a bequest of the estate to such issue would be raised.

A careful reading of the whole will leads us irresistibly to the conclusion that the testator had in mind the intention

In re Donges's Estate.

that upon the majority of the youngest of his after-born children the real estate, which meanwhile was devised to his widow, should pass to them, and that the failure to so declare was, as in the many cases above referred to, merely an omission to express an intention fully present in the mind of the testator. No other disposition is made, and all the other contingencies, except the existence of such children after attaining the age of twenty-one years, are covered. The leaving of such estate, with the attention of the testator obviously turned to the probable existence of such children, and the presumed inclination to provide for them, when added to the purpose of the will in the light of certain extrinsic evidence as to the situation, leaves no doubt in our minds of this intention of the testator; and it is our duty to declare and effectuate such intention in a case like this, and to supply the ellipsis or omission of the testator, so that there shall be added to the first paragraph of the will, "and then to my said children," and to hold that by the will itself the realty is devised to respondents upon the majority of the youngest.

The question next arises whether this devise to his two children of all of his real estate upon the arrival of the yougest at the age of twenty-one years is a "provision" for these after-born children, within the meaning of the statute. It is said this is not a present available provision for their support and maintenance from the time of his death, and it is perhaps contingent to the extent that it may be defeated by the death of both of said children before the youngest shall attain the age of twenty-one years. The authorities on this subject are not without conflict. In some states a bequest has been held not a provision within the meaning of the statute, because running only to a class, of which the after-born child became one; and in others it is held that the provision required by the statute must be an adequate or available one, and not postponed or reversionary; while in

other states a contrary view upon both of these propositions.
has been maintained.   The first of these positions is sup-
ported by *Bowen v. Hoxie*, 137 Mass. 527; *Rhodes v. Weldy*,
46 Ohio St. 234; *Holloman v. Copeland*, 10 Ga. 79; *Water-
man v. Hawkins*, 63 Me. 156; *Potter v. Brown*, 11 R. I. 232;
*Willard's Estate*, 68 Pa. St. 327.   It has little relevancy here.
It rests on the very obvious ground that a donation to a
class — like "my children" or "my heirs"— which in fact
exists at the time of making the will indicates no thought
in the mind of the testator of an after-born child, and justi-
fies no conclusion that any provision was intended to be
made for him.   It constitutes no evidence that the parent
did not entirely overlook the possibility of such child's ex-
istence.   *E converso* to this class of cases are *Meares v.
Meares' Ex'rs*, 4 Ired. Law, 192; and *Van Dusen's Estate*, 5
Pa. Dist. 234, where bequest to a class was held "provision"
for the after-born, it being apparent that the father had in
mind the possibility of future issue to take as part of such
class.   In the will before us, however, where the donation
is expressly and unmistakably to the after-born children, no.
doubt can exist that the gift was intentional, and any forget-
fulness or omission is, of course, excluded from possibility.

The second position, namely, that a mere contingent or
future bequest or devise does not constitute a "provision,"
within the meaning of the statute, is much urged by the re-
spondents, and is supported by the citation of many of the
authorities above mentioned, as to which it may be noted
generally that most of them are rested on both grounds;
and it is difficult to discover that the courts would have
held the provisions insufficient merely on the ground that
the bequests were postponed or contingent.

In *Hollingsworth's Appeal*, 51 Pa. St. 521, however, the
insufficiency of the donation was undoubtedly the sole ground
of holding the statute not satisfied.   In that case all the es-
tate was given absolutely to the wife of the testator, who

was appointed guardian of the children during their minority, and they committed "entirely and fully to her affection, judgment, and discretion for their maintenance, education, and future provision, and which guardianship I intend and consider as a suitable and proper provision for such child or children." The testator had no children, but contemplated after-born, one of whom was born nine days after the date of the will. In *Willard's Estate*, 68 Pa. St. 327, while much weight is given to the fact that the only provision for the after-born child resulted from its becoming a member of a class, viz., "heirs at law," yet the court undoubtedly laid much stress on the fact that the bequest was reversionary only, it being of a remainder to his heirs in $3,000 upon the death of the testator's mother and in a $7,000 homestead upon the death of the testator's widow; and the case is probably authority to the proposition that such a bequest is not a "provision," within the meaning of the Pennsylvania statute, for the reason that it does not "provide" for the needs of the children presently upon the death of their father, although the court does say: "The statute does not say fully or equally provided for. It may be true that, if it clearly appears by the terms of the will that an after-born child was within the special intention of the testator, if there was any provision, no matter how inadequate, the words of the statute would be satisfied." It must be borne in mind, however, that the Pennsylvania statute goes much further than ours, and has a different purpose, in that it attempts not only to make provision for children overlooked or unintentionally omitted by an ancestor, but restrains the power of a testator to disinherit children at all; and, such being the purpose and policy of the legislature, a very natural and proper construction would import the word "reasonable" as a qualification of the word "provision." In *Waterman v. Hawkins*, 63 Me. 156, the decision is again very ambiguous as to whether the failure to provide was because the only

In re Donges's Estate.

bequest of which the child could have any advantage was a general one "to my heirs," or because it was reversionary and contingent, being dependent upon the life or widowhood of testator's widow. Stress is laid upon both grounds, and it is the joining of the two which is held to leave the statute requiring provision for a child unsatisfied. The court said: "A child of a testator, born after his death, cannot, in any proper sense of the term, be deemed 'provided for in his will' by a general devise of a reversion to the heirs of the testator. There is nothing in such a provision to suggest that the child was thought of by the testator. The form of expression would indicate the contrary." In Maine, as in Pennsylvania, the statute restricts a testator from disinheriting his after-born children absolutely. In *Potter v. Brown*, 11 R. I. 232, the alleged provision for an after-born child was a bequest in trust for an existing daughter, to become hers absolutely on marriage or majority, with remainder over to her brothers and sisters then living in case of her death unmarried and a minor. The court rested its conclusion that no provision was made for the after-born child mainly upon the inadequate and contingent character of the bequest, but also on the general classification of the beneficiaries of that bequest, pointing out that it might include not only this after-born child of the testator, but also any children whom his widow might have by a subsequent husband, and upon both grounds held that there was no apparent intention in the testator to provide for the child in question. The statute in Rhode Island, like those before referred to, is restrictive of the testator's intention, and does not permit disinheritance of an after-born child.

The case of *Bowen v. Hoxie*, 137 Mass. 534, is strongly pressed by respondents, and is quite uniformly cited as sustaining both of the foregoing propositions. There the testator, after making bequests to his wife and living children, left the sum of $50,000 in trust, income to his wife during

life, and on her death to surviving children by her. The court pointed out first that the provision, if any, to the after-born child was a wholly unintentional one, saying, "The most that can be said is that the provision for a class happens to be broad enough to include her;" and then proceeded to point out its insufficiency, in that it was not a present provision, but might fall in only after a long lapse of time, saying, "She might live long, marry, have children, and die, without ever coming into the enjoyment of her share or interest, to which, as one of a class, she might be entitled;" and upon these grounds held that it did not constitute a provision within the meaning of the Massachusetts statute, which, like those above mentioned, gave an intestate's share absolutely, if no provision was made, without recognizing the testator's right to intentionally withhold such provision. This case, however, has been construed by the supreme court of Masachusetts in *In re Minot*, 164 Mass. 38, whereby it is limited to the one ground, viz., that the bequest to the after-born child was unintentional, and it is said that its reversionary character would not have destroyed its effect as a provision. In that case the whole of the property was given to a trustee, income to the testator's widow during life, and reversion to those who would then be his heirs at law by blood. At the time of the making of the will he had no children, but his wife was pregnant, and the court held that by the expression "heirs at law by blood" he had in mind and intended after-born children, and that, so construed, it constituted a provision.

In *Rhodes v. Weldy*, 46 Ohio St. 234, an after-born child was held not provided for by devise to the widow of all real estate for her life, and after her death to the heirs of her body begotten, and, in the event of her death without issue, over to collateral kindred. The grounds of the decision were complex, and involved the consideration that the child could have the benefit only by the accident of

her becoming a member of a class. "It was intended as a comprehensive direction of the course which the property should take after the immediate object of the testator's bounty should die." The court said it was wholly immaterial whether the interest of the child was contingent or vested, and, after referring to the authorities above reviewed, added to the ground above stated the consideration that it was not a present or available provision for her. The statute in Ohio, while different from our own, yet does reserve to the testator power to disinherit by making his intention so to do apparent by the will.

In Michigan, where we find our statute in exact words, in *Stebbins v. Stebbins*, 94 Mich. 304, construing a statute corresponding to our sec. 2287, the court held that a mere donation to the issue of a deceased child of a family Bible and a privilege to select certain ornaments and clothing as mementos was not intended as a provision, and, it appearing as a fact that the omission to make other provision for her was by accident and unintentional, enforced the statute in her favor. The court said: "It would undoubtedly be true that she would be concluded by the terms of the will itself if the testator had made some provision for her of a substantial character, however insignificant it might be in amount, but which showed that he intended it as a provision, and not as a keepsake merely." In *Forbes v. Darling*, 94 Mich. 621, a bequest of all property to the widow, with binding directions to provide for the maintenance and education of children during minority, was held to be a provision for them; although the court also held that the degree and quality of maintenance and education furnished could not be inquired into.

In Illinois the statute is, in general policy, like ours, reserving the testator's power to disinherit if he so intends, but providing against unintentional omission. In *Osborn v. Jefferson Nat. Bank*, 116 Ill. 130, the court construed a will devising all property to the testatrix's husband if he survived her, and

if he did not survive her and she should die leaving a child or children, then to her children. The husband did survive. The court said: " As to the provision for the after-born children, the statute is silent as to its extent, or whether it shall be reasonable or not, or as to when it shall commence or when terminate; but by its plain, unambiguous meaning it applies only to children for whom no provision is made by the will. If any provision is made for them, then they do not come within the purview of the statute. The testatrix was to be the sole judge of what this provision should be, and that the same was not to be left for the determination of the courts is manifest by the second clause of the section, which authorizes the disinheritance of such child or children altogether." And it was held that whether the will made a provision or not, it made perfectly plain that the testatrix had after-born children in mind, and that her intention was that they should have no other provision than that so made for them.

Other authorities bearing not so directly on the subject are *Rhoton v. Blevin*, 99 Cal. 645; *Hockensmith v. Slusher*, 26 Mo. 237; *McCourtney v. Mathes*, 47 Mo. 533.

In Wisconsin the question has never been decided. It was raised in the case of *Verrinder v. Winter*, 98 Wis. 287, but expressly left unanswered. The same word used in sec. 2171, R. S. 1878, which puts a widow to her election in case any provision is made for her, has been construed more than once (*Van Steenwyck v. Washburn*, 59 Wis. 483; *Turner v. Scheiber*, 89 Wis. 1; *Melms v. Pabst B. Co.* 93 Wis. 140), the general result of which is to give the word an exact literal meaning, and to hold that the giving to the widow anything in form is a " provision," within that statute, whether it be hers in possession, or whether it be valuable. Thus, in *Van Steenwyck v. Washburn, supra,* nothing whatever was given the widow, but estate placed in the hands of trustees with direction to expend whatever might be necessary to provide

for her comfort and physical health. This was held a "provision," and the same view taken in Minnesota. *Washburn v. Van Steenwyck*, 32 Minn. 336. In *Turner v. Scheiber, supra,* a devise to trustees, binding them to support the testator's widow during her life, was held to be a provision. And in *Melms v. Pabst B. Co., supra,* a bequest to her of all property charged with the payment of debts which would more than consume it all, was so held.

Considering our own statute untrammeled by the variant decisions of other courts, it must be borne in mind that the legislative purpose was not to restrict the parent, nor to dictate to him what provision he should make. It was not to control his intention, but to provide for after-born children in the not improbable event of forgetfulness or oversight of the parent, upon the very presumption, indeed, that if he had thought of them he would have intended that they should have some share in his estate, and that share the law would then fix. The power of the testator to decide whether anything, and if so how much and in what form, should be given to after-born children, is as uncontrolled as if there were no statute on the subject. And if it be apparent that he was not forgetful,— that he had the after-born child in mind, and satisfied the statute by making for it some provision,— we do not conceive it the purpose of the statute nor the province of the court to say that such will shall not govern, but that he not only must make some provision, as the statute requires, but must make provision adequate in the opinion of the court, or provision in any particular form. Such holding seems to us to import into the statute words and purpose not necessarily there, and would infringe upon the freedom of will in disposing of property and regulating estates. It is not apparent why it should not be as much in the power of the testator to place a child, born after the making of his will, in a state of dependency on the mother, as it confessedly is to do so with the child in existence when

the will was made. The perils to the child in each case are the same, and the reasons justifying or failing to justify interference by the legislature with the parent's wishes on the subject do not vary in one case from the other. *Hawhe v. C. & W. I. R. Co.* 165 Ill. 561; *McCourtney v. Mathes,* 47 Mo. 533; *Leonard v. Enochs,* 92 Ky. 186; *Rhoton v. Blevin,* 99 Cal. 645.

An analysis of all the authorities cited to us, or which have come under our notice, leaves without support the contention that, under a statute like ours, whose purpose is, not to constrain but only to supplement a testator's intention, the provision required to prevent intestacy as to an after-born child must be of a quality or value to satisfy a court's sense of justice, except in Ohio, and that support is ambiguous at the best. On the other hand, the courts of Michigan, Illinois, and Massachusetts clearly, and Missouri, Kentucky, and California apparently, sustain the other rule that any provision, intended as such, however slight, will be respected and enforced as the complete will of the testator. That view also is in accord with the tendency of our own decisions as to the provision which will be effective to cut off a widow's dower, and we think is supported by the better reason. We accordingly hold that the devise made by this will of a remainder in the real estate to the respondents upon the majority of the youngest constitutes a "provision" for them, within the terms of sec. 2286, and that the estate should be assigned and distributed according to the terms of the will, subject to such modification as results from the widow's election to take by law, and not under the will.

Independently of our view as to the sufficiency of this devise, still, we having decided that a devise is made, the same conclusion must be reached upon the same reasoning applied in *Verrinder v. Winter,* namely, that it appears from the will that such, and *no other,* donation was intended, and, if that is not a provision, none was intended.

In re Donges's Estate.

It is urged that costs of both parties in all courts should be ordered paid out of the estate, and that the county court should be directed to make an allowance for counsel fees to the respective parties, also to be paid out of the estate. This question resolves itself into two very distinct parts, although in practical application they have been greatly confused. The first is the allowance of costs proper, that is, taxable costs; second, the allowance of counsel fees or other expenses of litigation incurred by the antagonistic parties, and not included within the statutory fee bill.

As to the first of these, the right and liability of litigants to costs, and the amount thereof, is wholly statutory. *In re Carroll's Will,* 53 Wis. 228; *Mulberger v. Beurhaus,* 102 Wis. 1. For the court to allow or apportion costs, it is necessary to point to the specific provision of statute giving authority. As to costs in this court, the allowance of them, in cases for the probate or construction of wills, otherwise than in ordinary litigation, finds inception in the *Jackman Will Case,* 26 Wis. 364, a contested will case. It was there pointed out that sec. 36, ch. 264, Laws of 1860, now substantially embodied in sec. 2949, Stats. 1898, did not expressly allow any variation from the allowance of costs to the successful party and against the unsuccessful. But it was construed as intending to leave to this court a discretion broad enough to apportion those costs in such a case as there under consideration. And while that view, in the light of the general proposition above announced, savored somewhat of laxity, yet it has never been departed from, and has never received disapproval from the legislature, notwithstanding the two revisions since, and we think has become a settled construction of sec. 2949, and that, as a result thereof, in such cases as there and now presented, a discretion rests, under the statute, with this court, to allow or withhold costs, or to authorize their payment out of the estate, which amounts to the same thing as allowing them against the executor, and

In re Donges's Estate.

permitting him to be reimbursed from the estate. In pursuance of this view it was said in *Jones v. Roberts*, 96 Wis. 427, 433, speaking of costs in this court: "The established rule is, where the contestant of a will has acted in good faith, and questions of law or fact are worthy of consideration, costs taxed against him should be paid out of the estate." In the light of such uniform holding, upon due consideration, we do not deem it proper at this day to depart from that established rule of practice; and, as the contest before us was entirely justifiable and presented questions of law worthy of consideration, we think it proper that the taxable costs of both parties in this court should be paid out of the estate.

With reference to the circuit court, the costs must be governed by sec. 2918, which vests discretion in that court as to who shall recover costs, and as to whether the recovery shall be of the whole or only part of (but not more than) those taxable under the fee bill (*In re Carroll's Will, supra*); which discretion, however, is controlled in some measure by sec. 2932, requiring that any costs taxed against the executor shall be collected out of the estate unless the court shall direct them to be paid by him personally for mismanagement or bad faith.

In the county court taxable costs are controlled by sec. 4041, in applying which the county court is in some measure restrained by sec. 2932, which applies to all courts. *Mulberger v. Beurhaus*, 102 Wis. 1. The discretion thus vested in the circuit and county courts under the statutes above mentioned we shall not attempt to direct in advance, though it might be subject to review if abused.

The question of allowance out of the estate, or from one party to another, of expenses not taxable by statute, such as general counsel fees and the like, is a very different one. The allowance of such expenses at all out of an estate first appears to have been considered by this court in the case of

*Heiss v. Murphey*, 43 Wis. 45, which was one for the construction of a will. In the circuit court an allowance was made to the executor of $300 for his counsel fees, from which the beneficiaries under the will appealed. The allowance was sustained on the ground stated by RYAN, C. J., that by the general rules of courts of equity an executor may always in a proper case take the opinion of the court upon the will at the expense of the estate. The reason is, of course, obvious: it may be as essential to find out what the will means, in order to carry it out, as to take any other step or do any other act involving expense, and the expense of so doing is just as properly incurred in the performance of the executor's official duty in the one case as in the other. This is equally true as to trustees of any sort having duties to perform under the direction of a court. It bears no relation to the allowance of costs between litigants. This point of view was emphasized in the case (decided at about the same time) of *In re Kirkendall's Estate*, 43 Wis. 167, 177, where costs out of the estate were refused to opposing claimants, the executor being no party to the controversy. The question here under consideration goes further, and includes allowance of expenses of others than the executor, and is embarrassed by the fact that commencing with *Scott v. West*, 63 Wis. 529, and following through a considerable list of cases, this court has, without apparent discussion and without indicating any authority therefor, entered an order in suits for the constructions of wills, "that the county court make allowance out of the estate to the respective parties for counsel fees." Substantially this order appears in *Webster v. Morris*, 66 Wis. 366, 400; *Ford v. Ford*, 70 Wis. 19, 68; *Burnham v. Burnham*, 79 Wis. 557; *Beurhaus v. Cole*, 94 Wis. 617, 631, and perhaps some other cases. It is believed that such order has frequently been made by reason of either express or tacit consent of opposing parties, and we do not discover that in any of these cases there has been

In re Donges's Estate.

opposition raised thereto. The action of the court in that respect differs radically in character from the mere act of construing a costs statute having reference only to practice and procedure. The act of requiring one party to pay considerable sums of money for expenses incurred by another in litigation involves more than practice or procedure. Unless the authority for it exists in the law, so that by joining in litigation parties subject themselves to such obligation, it trenches closely upon that forbidden act of depriving one of his property without due process of law, or taking property from one for the private benefit of another.

The general subject was recently discussed in *Mulberger v. Beurhaus*, 102 Wis. 1, where it was said, in a litigation as to a trust estate: "There is no statute authorizing such a proceeding, and no precedent for it in this court. It is considered that counsel fees to others than the trustee who may be interested in the trust fund are not recoverable, either from the trustee personally or out of such fund. That was the rule in chancery before the Code, and there is no statute changing it, nor any precedent varying the old practice." Exception was there made for the one case, not there presented, of the construction of a will, embarrassed by the precedents above referred to, but which, except for such precedents, is governed by the same reasons, and should be subject to the same rules, as the proceeding presented in the *Mulberger Case*.

The confusion of counsel fee allowances with costs is not peculiar to Wisconsin, but appears in many states. Probably it results from the practice of the English court of chancery to allow such an item sometimes as part of the costs, under the designation of "costs taxed as between solicitor and client;" but even there such item was really distinct in kind from the regular fee bill, and was allowed, only in extreme cases, by virtue of Stat. 17 Rich. II. ch. 6, authorizing the chancellor to "allow damages according to his discre-

In re Donges's Estate.

tion to him which is troubled unduly." That statute obviously gave the broadest power to make impositions upon a litigant. Whether or not it became part of the common law, which immigrated to this country with the colonists, it is wholly superseded by the costs statutes, certainly in the code states. *Downing v. Marshall,* 37 N. Y. 380; *In re Carroll's Will,* 53 Wis. 228, where it was urged and denied effect to authorize such allowances.

Since, then, such allowances are not supported by any statute, how can they be justified? No good reason is apparent why the expenses of a litigant as to his ownership of property should receive the attention of the court or be paid by another when the litigation takes the form of construing a will, any more than if the same issue were tried in ejectment or replevin; but no one would contend that in the latter case any power to make such order existed in the court. Where parties are *sui juris,* and each litigating for the promotion of his own interests, each should bear the expense, as he will enjoy the fruits of his own contention; and the existence of a fund over which the court has control in no degree varies the principle involved or justifies infraction thereof. On mature consideration we are convinced that the habit of ordering payment of counsel fees, other than the executor's, is without authority of law and should not longer be indulged in, but that the cases and extent in which one party or any fund shall be required to contribute to the expenses of another in litigation must be limited by the costs statutes.

It will, of course, be understood that what we have said with reference to allowance of counsel fees, etc., has no application whatever to those reasonably incurred by an executor or any other trustee in the good-faith performance of his duties. No rule is better settled than that the trustee is entitled to pay those, as all other proper expenses which fall on him by reason of his trust, out of the trust funds in his

hands, and that when he comes to settle his accounts such payments will be allowed him as credits if, in the opinion of the court, they are proper in character and reasonable in amount.   In suits for construction of wills it is proper for the executor, whether plaintiff or defendant, to employ counsel to the end that the questions of law involved may be properly brought before the court.   Whether he should employ counsel to present in the spirit of advocacy one or other or both of the antagonistic interests which may be involved by the construction, will often be a question of difficulty. Too often the counsel employed by the executors are in practical effect the ardent advocates of one side of a controversy between individual interests, in which the executor, as such, should have no choice.  Obviously, such advocacy should not be compensated out of the common fund if its opposition is not to be also, and courts should be cautious in allowing for services ostensibly rendered to executors, but in spirit and effect rendered to one of the opposing interests, which should bear its own expenses.  The field of discretion in controlling and approving conduct of executors and trustees is a broad one, however, and the court in each case must be guided by the conditions and circumstances there present.  In the case at bar, in this court at least, the services of counsel on both sides have been rendered, not to the executors, but to the respective claimants upon this estate, who should each bear the expense therefor which he has incurred.

*By the Court.*— Judgment reversed, and cause remanded to the county court with directions to enter judgment in accordance with this opinion upon respondents' petition.  Taxable costs of both parties in this court will be paid out of the estate.