WILL OF SCOTT: JOHN H. PALMETER'S OLD LADIES' HOME,
     Appellant, vs. THERESA AND ELIZABETH HOME, Re-
     spondent.

*October 16—November 13, 1923.*

*Wills: Construction: Intention of testator: Bequest to "Old Peo-
     ple's" home.*

1. In construing wills the intention of the testator must be ascer-
   tained from the words of the will, in the light of all surround-
   ing circumstances.
2. A bequest in a will to the "Old People's Home of Racine" is
   construed not one to old people, nor for their benefit generally,
   but, in the light of surrounding circumstances, to be intended
   for the John H. Palmeter's Old Ladies' Home, founded by a
   friend and neighbor of the testator and known to be in need,
   and as such to be plain and unambiguous; such home, when
   the will was executed and when testator died, being the only
   institution in Racine for the care of or assistance of old peo-
   ple, and being commonly known as the "Old People's Home,"
   · "Old Folks' Home," or "Home for Old Ladies."
3. Where a case is presented for judicial construction, a meaning
   is to be preferred which will sustain testacy and the provi-
   sions of the will rather than to defeat them.

APPEAL from a judgment of the county court of Racine
county: WALTER C. PALMER, Judge. *Reversed.*

The appeal is from a judgment construing the will of
William Scott, deceased.

The clause of the will in question is as follows: "The
residue of my estate I give to the Old People's Home of
Racine, Wisconsin."

The county court adjudged that this provision created a
"charitable bequest," and held that it was for the benefit
of the old people of Racine, both male and female; that
such old people had an enforceable right to have the funds
used for their benefit; and that the best way to secure to
them this right was to turn it over to the *Theresa and Eliza-
beth Home,* an institution duly incorporated for the purpose
of building and maintaining an old folks' home for old men
and women.

For the appellant there were briefs by *Elbert B. Hand,* *Fulton Thompson,* and *C. C. Gittings,* all of Racine, and oral argument by *Mr. Hand* and *Mr. Thompson.*

For the respondent there was a brief by *Elmer E. Gittins,* attorney, and *Leonard P. Baumblatt,* of counsel, both of Racine, and oral argument by *Mr. Gittins.*

A brief was also filed by *Thompson, Myers & Helm* of Racine, attorneys for the Manufacturers National Bank, as administrator *de bonis non* with the will annexed of the estate of William Scott, deceased, and oral argument by *Peter J. Myers.*

On behalf of Hugh D. and Margaret J. Williams there was a brief by *Milton J. Knoblock* of Racine.

CROWNHART, J.    The comprehensive and all-dominating rule in construing wills is that the intention of the testator must be ascertained from the words thereof, in the light of all surrounding circumstances, and that intention be given effect. *In re Donges's Estate,* 103 Wis. 497, 79 N. W. 786; *Scott v. West,* 63 Wis. 529, 24 N. W. 161, 25 N. W. 18.

The facts and circumstances in this case are not in dispute. The only difference of opinion arises from the inferences to be drawn from such facts and circumstances.

William Scott, the testator, died July 1, 1911, at the city of Racine, Wisconsin, where he had lived continuously for forty years or more. He made his will April 29, 1902. He left surviving him his widow, Elizabeth H. Scott, and no other heirs. By his will his widow was given a life estate in his property. Among other things his will provided that "the residue of my estate I give to the Old People's Home of Racine, Wisconsin."

For many years prior to 1895 Mr. and Mrs. J. H. Palmeter lived in Racine within four or five blocks of the home of William Scott. Scott and the Palmeters were friends and Scott frequently visited at the Palmeter home. J. H. Palmeter and his wife for some years contemplated the establish-

ment of a home in Racine for old ladies.  J. H. Palmeter died some years prior to the death of his wife.  By her will, dated September 30, 1890, Mrs. Palmeter provided for the incorporation of the *John H. Palmeter Old Ladies' Home,* and during her lifetime, in February, 1891, had the *John H. Palmeter's Old Ladies' Home* incorporated.

Mrs. Palmeter, by her will, made certain bequests to the *J. H. Palmeter's Old Ladies' Home,* and made provisions for carrying out the purposes of such bequests.  Owing to the lack of sufficient funds the *Old Ladies' Home* was not actually built until the years 1904–1905.  This lack of funds was generally known among the people of Racine, and presumably was known to William Scott, who was a man well informed on public and semi-public affairs and conversant with general conditions in his city.

The will of Scott was drafted by an aged and competent lawyer and duly executed in 1902.  Prior to Scott's death there was no institution in the city of Racine for the care or assistance of old people, either men or women, save the *John H. Palmeter's Old Ladies' Home.*  This home for many years was commonly known and referred to as the "Old Folks' Home" and "Old People's Home" as well as the "Old Ladies' Home," and it was so generally known prior to and in the year 1902.  Scott himself, on one occasion two or three years before his death, referred to the *John H. Palmeter's Old Ladies' Home* as the "Old Folks' Home." His widow also understood that his bequest to the Old People's Home referred to the *John H. Palmeter's Old Ladies' Home.*  From these facts and circumstances the county court found that such bequest of Scott did not refer to the *John H. Palmeter's Old Ladies' Home.*

As noted, there was no other Old People's Home in Racine, either at the time Scott made his will, prior thereto, or subsequent thereto, up to the time of his death.  The language of the will is plain and unambiguous.  The residue of Scott's estate was left to the "Old People's Home

of Racine, Wisconsin." The language imports a then-existing home for old people, and it was that home to which the bequest was made. The bequest was not made to old people, nor for their benefit generally, but to a home actually existing and in being. There did exist at the time he made his will a home commonly known as the "Old People's Home," or "Old Folks' Home," or "Home for Old Ladies," and in the absence of any facts or circumstances showing that the testator intended the gift for some other then-existing home for old people, we must conclude that the testator had in mind the home established by his friends and neighbors, of which he was undoubtedly fully cognizant. The scrivener of the will, an old resident of Racine, a careful and competent lawyer, certainly did not intend to create a charitable bequest for old people generally by the language in question. He must have understood, as the testator must have understood, that the bequest referred, in the language of the street, to the *John H. Palmeter's Old Ladies' Home*. The knowledge of Scott that the home was in need of funds in order to carry out the bequest of Mrs. Palmeter would naturally be an inducement to Scott to make the bequest in question for the benefit of the *Old Ladies' Home*.

It is contended by the respondent that if the bequest of Scott cannot be construed as a charitable bequest or trust for old people generally, then it fails for lack of definiteness and the estate will go to the heirs of the widow of Scott. It is a general rule of law that a will speaks as from the time of the testator's death, and that the intent of the testator must prevail where it is possible to ascertain that intent. Where a case is presented for judicial construction, a meaning is to be preferred which will sustain testacy and the provisions of the will rather than to defeat them. To hold that the heirs of the widow of the testator are entitled to the property would be to wholly defeat the plain intent of the testator. We are of the opinion that the will, in the light of the existing circumstances at the time it was drawn,

is plain and unambiguous, and that the "Old People's Home" as used therein refers to and was intended to refer to the *John H. Palmeter's Old Ladies' Home,* and that such home is entitled to receive the bequest under the residuary clause of the will.

*By the Court.*—The judgment is reversed, with directions to the county court to enter judgment in accordance with this opinion.