216 JULY, 1886.

SARAH H. KENT & another *vs.* JOSIAH F. DUNHAM
& others.

Suffolk. March 23. — July 1, 1886. W. ALLEN & HOLMES, JJ., absent.

A devise in a will of certain property of the testator to two persons named, " their heirs and assigns forever, and to the survivor of them and his heirs forever, in trust, to sell, dispose of, invest, and manage the same, and appropriate such part of the principal and interest as they may deem best, for the aid and support of those of my children and their descendants who may be destitute, and in the opinion of said trustees need such aid," cannot be upheld as a public charity, and is invalid.

BILL IN EQUITY, by two heirs at law of Josiah Dunham, who died on April 28, 1857, to have a certain trust created by the residuary clause of his will declared void. The defendants demurred to the bill, for want of equity. Hearing, on bill and demurrer, before *C. Allen*, J., who reserved the case, which appears in the opinion, for the consideration of the full court.

*C. H. Hill & L. S. Dabney*, for the defendants.

*R. M. Morse, Jr. & H. Dunham*, for the plaintiffs.

DEVENS, J. The gift in the residuary clause of the will to " Samuel Leeds and Josiah Dunham, Jr., their heirs and assigns forever, and to the survivor of them and his heirs forever, in trust, to sell, dispose of, invest, and manage the same, and appropriate such part of the principal and interest as they may deem best, for the aid and support of those of my children and their descendants who may be destitute, and in the opinion of said trustees need such aid," will not admit of being construed as a gift to the testator's children and their descendants who might be living at the time of the testator's decease, or that of the last of his children. The language used, as well as the declared purpose, shows that it is a gift in trust for the benefit of those descendants of the testator who should thereafter, through an indefinite period of time, become destitute and in need of aid and support. The words import that the bequest is ultimately to be administered by others than the trustees named, and that the testator has not sought to repose a special confidence in them exclusively; but to establish a permanent trust for which trustees are ultimately to be appointed according to the ordinary rules of courts of equity. That such

a gift is too remote, as tending to create a perpetuity when it is to be held for the benefit of those who may not have been living at the time of the testator's death, òr that of his children, and who may not come into being until many years thereafter, cannot be controverted, unless it can be sustained as a public charity. *Nightingale* v. *Burrell*, 15 Pick. 104. *Brattle Square Church* v. *Grant*, 3 Gray, 142. *Sears* v. *Russell*, 8 Gray, 86. *Thorndike* v. *Loring*, 15 Gray, 391. The Attorney General has therefore been made a party to this bill, as well as all the descendants of the testator. *Jackson* v. *Phillips*, 14 Allen, 539.

A public or charitable trust may be indefinite in duration, and, its general object or purpose, as indicated, being charitable, the application and selection of the particular objects or individuals who are to receive its benefits may be confided to those who are its trustees. That a gift should have this character, there must be some benefit to be conferred upon, or duty to be performed towards, either the public at large, or some part thereof, or an indefinite class of persons. If a trust were created for the benefit of the poor of a particular town or parish, or of persons of a specified class or occupation, as seamen, laborers, or mechanics, it would not be doubted that it would be good as a charity. So, if à sum were bequeathed, the income of which, from time to time, or in the discretion of the trustees, was to be applied to the relief of the destitute, by distribution of fuel or provisions, or in any other similar defined mode, or as the trustees might deem most expedient, the gift could be enforced as a public charity.

The gift in the case at bar is solely for the benefit of the children of the testator and their descendants. The only public interest there can be in connection with it is, that, whereas there may be hereafter certain destitute persons, descendants of the testator, who might otherwise become a public charge, they will be entitled to relief from this fund. This legacy, it will be observed, is readily distinguishable from one by which the income of a fund is devoted to the poor of a particular town or parish, preference being given to the descendants or the relations of the testator. In such a donation, there is a public object, as they are thus provided for only as a part of the poor who are to receive the benefit of the charity, although a preference

is given them, on account of their descent or relationship, in its distribution.

There are certain English cases, which, as the trustees contend, afford strong ground for holding this legacy to be a public charity. In *Attorney General* v. *Bucknall*, 2 Atk. 328, decided in 1741, the point decided was, that any person, though the most remote in the contemplation of the charity, might be a relator in an information in reference thereto. The facts, as stated in the case, do not show that any question arose as to whether the bequest was a public charity, the only inquiry apparently being whether the relator was one of the poor relations who were the objects of the bounty. In *White* v. *White*, 7 Ves. 423, decided in 1802, it was held that a bequest to poor relations of two families for putting out their children as apprentices, the duration of which would have exceeded the limits allowed by law, unless it was a public charity, might be executed by putting out those who were then ready as apprentices. There was no discussion of the subject in the opinion of the Master of the Rolls, Sir William Grant. In *Attorney General* v. *Price*, 17 Ves. 371, decided in 1810, there was a direction to pay 20*l.* per annum to the testator's poor kinsmen in the county of Brecon, which was held good as a charity, apparently upon the authority of *Isaac* v. *De Friez*, Ambl. 595, and on the ground that it was entitled to have perpetual continuance for the benefit of a particular class of poor. In *Gillam* v. *Taylor*, L. R. 16 Eq. 581, it was held that, where the testator gave the residue of his real and personal estate to trustees for investment in their joint names, and directed the interest from time to time to be paid to such lineal descendants of a person named, "as they might severally need," the gift was charitable; and that it need not be distributed to those actually poor, but only to those relatively so; and thus that, if all the descendants except one had 20,000*l.* a year, and the latter 10,000*l.* a year, he would be entitled. This decision is treated with but scant respect in *Attorney General* v. *Northumberland*, 7 Ch. D. 745, by Sir George Jessel, M. R., where it is said that such a charity could only be good in favor of those actually poor. In this last case, the gift gave only a preference to the kindred of the testator in the distribution of the income of the trust fund to the poor, which was provided for annually.

These cases do not fully sustain the position that the legacy here in question can be upheld as a public charity. In all of them, there were persons so situated as to be entitled to the benefit of the charity, so that an indefinite accumulation was not to be permitted in favor of a class which might never have an existence, or might not come into existence within any period of time when its connection with the testator could be traced.

Bequests in favor of poor relations also are for a far more extensive class than descendants. While the failure of issue, and thus the termination of the line of lineal descent, is comparatively common, the ancestors of every person are indefinitely numerous, and there can be no failure of collateral relations except such as may arise from the impossibility of tracing the descent of the testator.

Without desiring to express any opinion as to whether we should hold it to be our duty to follow the doctrine of these cases, if the question presented by the case at bar were fairly within them, the reasons why the gift of the testator cannot be sustained as a public charity appear to us entirely sufficient.

It is the policy of the law to prevent indefinite accumulations of property for the benefit of individuals. The descendants of the testator are now, and have been since his decease, in comfortable circumstances. Not only may a long time elapse before any descendant will exist who can be termed a "destitute" person, but such a time may practically never occur, as it may be at so distant a period that descent cannot be traced, or the event of the failure of descent from the testator may render it impossible that it should ever occur. In the expectation of the remote contingency that there shall be a descendant who is a destitute person, the fund is to be permitted to accumulate, if the will of the testator is followed. If the line of descent from the testator fails, it will have been accumulated for his heirs, it may be in a remote generation. There is no general public object sufficient to justify this accumulation, in the possible advantage which the public may obtain by having the descendants of the testator protected from beggary, and thus from becoming a public charge. To establish, as a permanent charity, a provision for a single family, and thus, it may be,

to permit an indefinite accumulation of property, which might eventually be solely for the benefit of the testator's heirs, and those who may claim under them, would be foreign to the general principles of our law on this subject, and cannot be justified by so slight a prospective public benefit.

The result is, that the portion of the residuary clause of the testator's will, which seeks to establish a trust in two thirds of the residue of his estate for the benefit of his children and their descendants " who may be destitute, and in the opinion of said trustees need such aid," must be decreed to be invalid and without effect.                    *Demurrer overruled.*