LAWRENCE, Executor, Appellant, vs. BARBER and others, Respondents.
SAME, Respondent, vs. SAME, Appellants.

*December 18, 1902—January 13, 1903.*

*Wills: Codicils: Construction: Executors: Duties under power of sale: Appointment of trustee: Intestacy: Bequests by implication: Presumptions: Evidence.*

1. The will of testator devised his homestead to his four children. It further provided that all the residue of his estate should go to them in trust to sell and distribute to beneficiaries named.

By a codicil, made after the death of one child, he gave one-twelfth of his estate to the children of such deceased child, to be held for them in trust, and directed that immediately after his death his homestead be sold and the proceeds disposed of according to the terms of the will and codicil. The will appointed an executor, and appointed the testator's children as trustees to sell and distribute the residuum of the estate. Sec. 2128, Stats. 1898, provides that when a power in trust is created by will, and the testator has omitted to designate by whom the power is to be executed, its execution shall devolve upon the circuit court. *Held*, that sec. 2128 did not apply; that by the terms and provisions of the will the sale of the homestead was made a part of the administration of the estate, and, having appointed an executor, thereby the testator designated such executor to make such sale.

2. In such case, it was error to assume that the testator had omitted to designate by whom the power of sale was to be executed, and, by applying said sec. 2128 to the situation under said will, appoint a trustee to make such sale.

3. In such case, there was nothing in the will expressly giving the trustees, appointed to sell and distribute the residue of the estate, any right or authority over the homestead. *Held*, that the sale of the homestead being a duty to be performed by the executor as part of the administration of the estate, and the proceeds, when realized, being a part thereof, such proceeds should be paid and distributed, as personalty, directly to the beneficiaries named, and it was therefore error to direct the executor (appointed by the court trustee for the purpose of making sale of the homestead) to pay over the proceeds to the three children as trustees, to be by them immediately distributed.

4. Testator gave his homestead and household effects to his four children, and the residue of his estate to them as trustees for sale and distribution among designated beneficiaries. After the death of one child, he made a codicil by which he gave to the children of such deceased child one-twelfth interest "in all my estate, real, personal, and mixed." The codicil further provided that the homestead be sold, and that its proceeds be disposed of "according to the terms of my will and the provisions of the codicils thereof." *Held*, that the word "all" in the express command that the grandchildren were to have one-twelfth of all the estate, was too significant, definite, and unambiguous to warrant a construction that would deprive the grandchildren of one-twelfth of the proceeds of the homestead.

5. Where a decedent has left a will, the question whether intestacy exists as to any part of his estate, and the rights of his heir thereto, depends not upon whether the testator intended such situation to exist, or supposed it would exist, but whether he has, by his will, disposed of all his property.

6. In determining whether there is intestacy as to any part of a testator's estate, it is not absolutely imperative that express and unambiguous words of gift and designation of beneficiaries should be physically written in the will; it is sufficient that the court can find by necessary implication from the words used, that the testator had an intent that his property should go in a certain direction, and that he has so attempted to declare that intent.

7. The presumption that one who makes a will intends to dispose of all his property is not conclusive on the question of intestacy. In determining that question, it is not without weight in interpreting and construing the language used, and may be used to aid the court in understanding what was attempted to be expressed.

8. Testator gave his homestead to his four children, and the residue of his estate to them in trust for sale and distribution among the four children and another. One child having died, he made a codicil reciting that he desired to modify that portion of his will giving certain of his estate to the deceased son, one of the four, and did modify it by revoking all devises and bequests made to him. He then gave to the deceased son's two children a one-twelfth interest in all his estate, to be held in trust until their majority, provided, if either died during minority, that then a proportionate part of the devise should revert to the estate to be divided according to the provisions of the will and codicil. He expressly forbade the mother of the children from acting as trustee, and expressed a desire that none of his estate should, either directly or indirectly, pass to her or under her control. He also directed that his homestead should be sold immediately after his death, and the proceeds disposed of according to the terms of his will and codicil. In all other particulars he ratified his will. *Held:*

(1) That the last will of testator consisted not of one paper, but of the will and codicils together, and that they, interacting on each other, spoke his purpose that the entire estate should be divided between the five persons in the proportions named.

(2) That none of his estate was intestate property.

(3) That the grandchildren took their one-twelfth of the residuum of the estate subject to the trust created by the will.

(4) That the grandchildren had no interest in the question whether or not the trust was valid as to the interests of those who were at once trustees and beneficiaries, nor whether there was any merger as to such interests.

APPEALS from a judgment of the circuit court for Milwaukee county: LAWRENCE W. HALSEY, Circuit Judge. *Modified and affirmed.*

Petition by executor for construction of the will of Edward Barber, who died domiciled at Milwaukee December 7, 1901, leaving surviving him as heirs at law *Edward B., Benjamin C.,* and *Florence M. Barber,* children, and two grandchildren, children of his son Harry C. Barber, who died in August, 1899. The will, as probated, consisted of the original will, executed November 7, 1891; a first codicil of July 11, 1895, which merely changed the nomination of executor; and a second codicil, executed August 9, 1900. The original will disposed of the property as follows:

'First. To my daughter *Florence M. Barber,* my oil painting of myself. Second. To my son Harry C. Barber my crayon portrait of myself. Third. To my children Harry C., *Edward B., Benjamin C.,* and *Florence M. Barber,* all the rest of my household furniture, wearing apparel, and personal ornaments. Fourth. To my said children [naming the same four], their heirs and assigns, forever, my homestead. Fifth. All the residue of the estate, subject to debts, to my said children [naming the four], or such of them as shall survive me, and their survivors, in trust to sell the same or any part, in discretion, and meanwhile to care for, manage, and collect rents and profits, to distribute the net income annually, and the proceeds of sales within a reasonable time after such sales, as follows: Eleven-twelfth parts thereof to my said children [naming the four], equally, and the remaining one-twelfth part thereof to my stepdaughter, *Virginia C. Williams.* . . . The duration of the estate of my said children . . . as trustees as aforesaid shall not exceed the life of the survivor of my said two youngest children, namely, *Benjamin C. Barber* and *Florence M. Barber.* Sixth. All the rest, residue, and remainder of all my estate . . .

to my said children [naming the four], eleven-twelfth parts
thereof, and to my said stepdaughter . . . the remain-
ing one-twelfth part thereof. Seventh. In case of death of
either child without issue, his share to pass to the others in.
the same manner as to him if living.'

An executor was named, other than the trustees, and the
trustees were exempted from giving bond.

The second codicil, executed after the death of the eldest
son, Harry C. Barber, recited that certain property had been
devised and bequeathed unto him, and that he had since died,.
leaving surviving him a widow and two children, *Charles M.*
and *Ruth E.,* and proceeded:

"Whereas, it is now my desire to modify that portion of my
said last will and testament wherein and whereby I give,.
grant, devise, and bequeath certain of my estate to my said
son Harry C. Barber: Now, therefore, I desire to, and do
hereby, modify my said last will and testament in so far as
the same relates to my said son Harry C. Barber by revoking.
and hereby do revoke all grants, devises, and bequests made in
said last will and testament to my son Harry C. Barber; and
I hereby grant to my grandchildren *Charles M. Barber* and
*Ruth E. Barber,* children of my said son Harry C. Barber,
and unto them together, share and share alike, an undivided
one-twelfth (1-12) interest in and to all of my estate, real,
personal, and mixed, it being my express intention that the
two together shall receive an undivided one-twelfth (1-12) of
my estate, and not an undivided one-twelfth (1-12) to each
of said children, with this express provision: That, if either
or both shall die before arriving at the age of twenty-one
years, then upon such death or deaths, his or her share, or
the whole thereof in the event of both dying, shall revert to
my estate, to be divided according to the provisions of my last
will and testament and the first and second codicils modifying.
the same. And I further direct that the said undivided one-
twelfth (1-12) of my estate so devised and bequeathed to the
said *Charles M.* and *Ruth E. Barber* shall be held in trust by
a suitable trustee appointed by the county court of Milwau-
kee county, for the use and benefit of the said *Charles M.* and
*Ruth E. Barber,* until they shall arrive at the age of twenty-

one years respectively, at which time the interest so devised and bequeathed shall be paid and turned over to each, respectively. In the appointment of the trustee I expressly prohibit the appointment of Lizzie Barber, mother of said *Charles M.* and *Ruth E. Barber,* as such trustee, it being my desire that none of my estate shall pass to, or under the control of, directly or indirectly, the said Lizzie Barber, wife of my said son Harry C. Barber. The crayon picture which I bequeathed to my son Harry C. Barber in my aforementioned last will and testament I give and bequeath to whichever of my sons *Edward B. Barber* or *Benjamin C. Barber* shall be successful in winning the same by the manner of drawing cuts. I hereby further modify my last will and testament by directing that immediately after my death my said homestead shall be sold, and the proceeds thereof disposed of according to the terms of my last will and the provisions of my said first and second codicils thereof. I, Edward Barber, hereby ratify and confirm my said last will and testament in every particular, excepting in so far as the same is modified by my first and this, my second, codicil thereto, and I hereby ratify and confirm all the provisions of my said first codicil."

The estate exceeded $100,000, and included a large number of parcels of real estate, apparently held by the testator for the purpose of sale, and not for use. The circuit court rendered judgment construing the will to give—First, the two portraits absolutely to the persons named.; secondly, the household effects, library, etc., to the three surviving children, subject to the payment of one-twelfth of the value thereof, to be thereafter ascertained, to the trustee of the two grandchildren; third, that the homestead was ordered converted into personal property; that, no persons having been named to make such sale, *Abbott Lawrence,* the same person named as executor in the will, should be and was appointed trustee to make the same, subject to the approval of the court, and to pay the net proceeds to *Edward B., Benjamin C.,* and *Florence M. Barber,* the trustees named in the fifth paragraph of the will, for immediate distribution, one-twelfth thereof to the trustee of the grandchildren and eleven thirty-sixths

thereof to each of the three children of the testator. The judgment also provided that all the residue of the estate after payment of debts, expenses, etc., is required to be assigned to, and will thereupon vest in, said *Edward B., Benjamin C.,* and *Florence M. Barber,* and the survivors of them, as trustees, to sell, convey, and dispose of the same, and manage and collect profits, and pay and distribute the net income thereof annually, or oftener, and the net proceeds of the sale of the trust real estate, or any part thereof, within a reasonable time after such sale, to the persons and in the proportions following, to-wit: Ten thirty-sixths thereof to each of said children of the testator *Edward B., Benjamin C.,* and *Florence M. Barber,* one-twelfth thereof to *Virginia C. Williams,* and one-twelfth thereof to the trustee of the two grandchildren, for the use and benefit of said grandchildren, until they respectively arrive at the age of twenty-one years, at which time one-half of said one-twelfth is to be paid over to each of said grandchildren arriving at majority; but if either or both of said grandchildren shall die without issue before arriving at the age of twenty-one years, thereupon the share of either or both dying shall be paid over by said trustee of the grandchildren to the said *Edward B., Benjamin C.,* and *Florence M. Barber,* their personal representatives or assigns, in equal shares. It was further adjudged that all of the estate of the decedent is disposed of by his said will and codicils, and no part thereof or interest therein is to be considered or treated as intestate estate.

The plaintiff executor appeals from that portion of the judgment awarding all of the property above the one-twelfth to *Virginia C. Williams* and one-twelfth to the two grandchildren to the three surviving children, and from that part which adjudges that the homestead is to be sold by a trustee, and not by the executor in his capacity as such, and from that part which adjudges that the entire estate is disposed of by the will, and no part thereof intestate.

The two grandchildren, by their guardian *ad litem,* Robert N. McMynn, appeal from the whole of said judgment, except so much thereof as disposes of the two portraits, and so much as adjudges that the homestead be immediately sold, and the proceeds be treated as personalty, and awards to them one-twelfth thereof.

The three children of the testator appeal from those parts of the judgment which award to the grandchildren one-twelfth of the value of the household effects and that part which holds them entitled to one-twelfth of the proceeds of the homestead. All such appeals were heard together.

*Joshua Stark,* for the plaintiff.

For the defendants *Edward B., Benjamin C.,* and *Florence M. Barber,* there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Charles Quarles,* of counsel; for the defendants *Charles M.* and *Ruth E. Barber,* there was a brief by *Robert N. McMynn,* guardian *ad litem,* and *C. H. Van Alstine,* of counsel; and the cause was argued orally by *Mr. Geo. Lines* and *Mr. McMynn.*

Dodge, J. 1. The principal error assigned upon the appeal of the executor is the holding by the circuit court that the sale of the homestead commanded by the second codicil was not to be performed by the executor in his official capacity as such, but by some trustee to be appointed by a court of equity; in accordance with which holding, *Mr. Lawrence,* who was in fact executor, was appointed such trustee, and was directed to pay the net proceeds to *Edward B., Benjamin C.* and *Florence M. Barber,* the trustees named in the fifth paragraph of the will, for immediate distribution, one-twelfth to the trustee of the grandchildren and eleven thirty-sixths to each of the three children. In this respect we are persuaded the circuit court erred. The authorities are numerous, and practically unanimous, that, where the sale of real estate is commanded by a will, obviously as a part of the settlement of

that estate within the province of the probate court, and preliminary to the final accounting and distribution, the implication, in the absence of anything to show a different intention, is that the executor selected by the deceased to administer said estate and to execute said will, is the person to perform such step, which is a part thereof. *Bogert v. Hertell,* 4 Hill, 500; *Meakings v. Cromwell,* 5 N. Y. 136; *Lesser v. Lesser,* 32 N. Y. Supp. 167; *Meehan v. Brennan,* 45 N. Y. Supp. 57; *Lindley v. O'Reilly,* 50 N. J. Law, 636, 15 Atl. 379. The court below apparently felt constrained to his conclusion by sec. 2128, Stats. 1898, providing that when a power in trust is created by will, and the testator has omitted to designate by whom the power is to be executed, its execution shall devolve upon the circuit court. The fault in the reasoning which would apply this section to the situation under the present will is in assuming that the testator had omitted to designate by whom the power of sale was to be exercised. The effect of the authorities upon the subject is that by directing such a sale to be made as a part of the administration of the estate, and naming a person to execute the will and administer that estate, by clear implication the testator does designate such executor as the person to perform the act. *Meakings v. Cromwell, supra.*

The further direction of this portion of the judgment that the proceeds of the homestead be paid over by the trustee making the sale to the three trustees named in the fifth paragraph of the will, to be by them at once divided, and paid over to the respective legatees, perhaps resulted from the error of the circuit court already pointed out, whereby he concluded that the sale was to be made outside of the ordinary administration of the estate, and by a specially appointed trustee, whence he conceived it necessary that the proceeds should come back into the estate in some way, and adopted this direction as a method of accomplishing that result. As already shown, this sale should be made by the executor in and as a

part of the administration of the estate, and the proceeds, when realized by him, are part of the estate,—doubtless personalty, on the doctrine of conversion resulting from imperative command to sell. Being such, there is no reason why the executor should not pay those proceeds directly to the persons to whom they are bequeathed, instead of adopting the circuity of procedure required by the judgment. There is nothing in the will expressly giving the trustees appointed by the fifth paragraph any right or authority over the homestead or its proceeds, and there is no necessity to involve them at all with reference thereto. Clearly, the whole purpose of the bequest is accomplished by directing the executor to pay the net proceeds of the homestead, one-twelfth to the trustee of the two grandchildren, and, in equal shares, to the three children of the testator, either thirty-three thirty-sixths or twenty-seven thirty-sixths, depending on whether or not there shall be found intestacy as to any portion of the homestead or its proceeds. Upon this assignment of error, therefore, the judgment must be modified to declare that the sale commanded shall be made by the executor in his official character, and the proceeds paid and distributed as personalty directly to the trustee of the grandchildren and to the three children of deceased.

2. The next question which is raised by assignment of error upon the appeal of the three children of the testator is whether the bequest contained in the second codicil, to the two grandchildren, of an undivided one-twelfth interest "in all my estate, real, personal, and mixed," extends to the household effects and homestead. The appellants alleging this error contend that it is apparent from the character of the property and from the general scheme of the codicil that the testator did not intend to give to these grandchildren an interest in anything except the residuum of the estate devised and bequeathed to trustees for realizing and distribution by the fifth paragraph of the will. While conceding that there are some circumstances which tend with more or less cogency to

this conclusion, we cannot deem them sufficient to overcome the express command that these grandchildren are to have the one-twelfth of all the estate. The word "all" in that connection is too significant, definite, and unambiguous to warrant us in entering upon the field of interpretation and holding that, instead of all, part only was intended. Further, such construction would render meaningless the direction of the codicil that the proceeds of the homestead be disposed of "according to the terms of my will and the provisions of the first and second codicils thereof." There are no provisions of such codicils having any relevancy, unless the gift of one-twelfth to the grandchildren applies to the homestead.

3. The next in natural sequence is the principal assignment of error and ground of appeal, assigned by the guardian *ad litem* of the two grandchildren,—for that the court held that there was·no intestacy with reference to the portion of the estate which by the will had been given to Harry C. Barber, and by a revocation contained in the second codicil was prevented from passing, under the statute (sec. 2289, Stats. 1898), to his issue, and that by clear and necessary implication this portion of the estate, after deducting the one-twelfth by that codicil bequeathed to the grandchildren, was bequeathed to the three surviving children of the testator, the contention of these appellants being that the result of the revocation of the bequest to Harry C. left his one-fourth of the homestead and thirty-three one hundred forty-fourths of the other property intestate, except that one-twelfth of each of said shares was specifically devised by the codicil; that, as a result, the said minors, as heirs at law of the testator, were entitled to inherit one-fourth of these fractions, towit, one twenty-fourth of the proceeds of the homestead, and a slightly less fraction of the residuum of the estate devised by the fifth paragraph of the will to the trustees for collection and distribution. The preliminary and difficult question is, however, whether there is intestacy as to any part of the

estate, or whether there can be found in the words of the will and its codicils, read in the light of all the surrounding facts and circumstances, an implied devise or bequest of all of the estate to any one, and, if so, to whom. Much of the discussion is addressed to establishing the negative intention of the testator that there should be no intestacy, and that the two children of Harry C. Barber should receive nothing from said estate except the one-twelfth placed in trust for them upon a condition subsequent to revert in case of their death without issue before majority. There is but little controversy or doubt that the testator supposed and expected there would be no intestacy, and no share of his estate to pass to these grandchildren, except the specified one-twelfth. That is supported by a presumption that one who makes a will intends to dispose of all his property, and by many inherent probabilities disclosed by the will and codicils themselves, to be suggested later. But this is inconclusive. Intestacy and the rights of heirs depend not on whether the testator intended such a situation should exist, or supposed it would exist, under his will, but whether he has, by the will, disposed of all his property. The strongest of negative declarations on his part cannot serve to prevent either intestacy or rights of heirs at law. Those arise necessarily and by force of law, unless the testator has given all his estate to some one. If as to any portion of the estate we are unable to say that it is given by the will and the codicils, then intestacy results, no matter how averse the testator may have been thereto; and the right of the heir to his legal portion must be declared, however strenuous had been the testator's wish and purpose to cut him off. *Parsons v. Millar,* 189 Ill. 107, 59 N. E. 606; *O'Hearn v. O'Hearn,* 114 Wis. 428, 90 N. W. 450. On the other hand, it is not absolutely imperative that the express and unambiguous words of gift and designation of beneficiaries should be physically written in the will, in order that

the court may be able to find that the testator has thereby made donation. The doctrine of bequest by implication rests upon the proposition that courts may be able to find by the words used, not only that the testator had an intent that his property should go in a certain direction, but that he has so attempted to declare that intent and purpose that courts can find it by necessary implication from the words used. Schouler, Wills, § 561; Underhill, Wills, § 463 *et seq.; Earl v. Grim,* 1 Johns. Ch. 494; *In re Vowers' Will,* 113 N. Y. 569, 21 N. E. 690; *Masterson v. Townshend,* 123 N. Y. 458, 25 N. E. 928; *Powell v. McDowell,* 194 Ill. 394, 397, 62 N. E. 879; *Hand v. Marcy,* 28 N. J. Eq. 59; *Baker v. McLeod's Estate,* 79 Wis. 534, 48 N. W. 657; *In re Donges' Estate,* 103 Wis. 497, 79 N. W. 786; *Davies v. Davies,* 109 Wis. 129, 85 N. W. 201; *O'Hearn v. O'Hearn, supra.* The limitation on courts to merely construe the will made, and not to make such a will as they believe the testator wished, but did not make; to find in the words used an attempt to declare a given purpose, not to attempt to give effect to an actual, but wholly undeclared, purpose,—was not so carefully stated as it should have been in the opinion in *In re Donges' Estate, supra,* although the decision made in that case was distinctly within such bounds. The court there found in the limitation upon the wife's title and the condition upon which she was to take absolutely a clear attempt to declare testator's purpose that his children should take the real estate upon the contingency named. The duty of courts in raising devises by implication was accurately expressed in *O'Hearn v. O'Hearn,* 114 Wis. 432, 90 N. W. 451, thus:

"It is only admitted as a means of carrying out what the testator appears on the whole to have really meant, but failed somehow to express as distinctly as he should have done. In other words, a gift by implication must be founded upon some expressions in the will from which such intention can be inferred. It cannot be inferred from an absolute silence

on the subject. . . . The court cannot reform the will by changing its language, or add provisions not written therein. It can only construe the instrument as written."

The problem before us, therefore, is whether we can find in the words used by the testator, in either will or codicil, or all combined, an attempt to declare a gift to any one of the one-quarter of his estate which was given to Harry C. by the will as originally drawn. While, as we have already said, the clearest intention of the testator against intestacy or against the right of an heir at law to inherit any of the property is inconclusive, it is by no means without weight in interpreting and construing the language used. It is one of those attendant circumstances which serve to aid the court in understanding what was attempted to be expressed by the language used. The court may avail itself of that and the other circumstance to put itself as nearly as possible in the situation of the testator at the time when the words of the will were written (*Brittingham & H. L. Co. v. Manson,* 108 Wis. 221, 84 N. W. 183), to re-establish the light and atmosphere in which was painted the "picture of the mind" of the testator, as a will is sometimes called, so that it may appear to the reader as it did to the writer. We have already said that we think it very apparent that the testator did not wish nor intend to leave any of his property intestate, nor any to descend absolutely to his grandchildren. The whole scheme of the will and codicils shows this; but especially convincing is the declaration of the codicil that testator does not purpose that any part of his estate shall pass to or under the control of the mother of these grandchildren, directly or indirectly. That purpose will be thwarted if anything passes to them as intestate property, especially if either of them should die unmarried and intestate, so that the mother would take as heir of her child. Again, the provision for reversion to the estate of the share of either grandchild upon death during minority, for distribution according to will and codi-

cils, is utterly incongruous with the idea that a portion of
that share, when it has reverted to testator's estate, imme-
diately becomes repayable to the personal representative of
the same deceased grandchild as intestate property.   For
these and other considerations it is doubtless our duty to read
the will as attempting to dispose of the entire estate, but
nevertheless we must be limited by the necessity of finding
words therein capable, by construction, of indicating the
testator's wishes as to such disposition.   The mere revocation
of bequest to Harry C., even accompanied by confirmation of
all the rest of the will, probably would not, under the author-
ities, suffice to justify an implication of gift of that share to
any or all the other beneficiaries.   *Creswell v. Cheslyn,* 2
Eden, 123; *Ramsay v. Shelmerdine,* L. R. 1 Eq. 129; *Mink-
ler v. Simons,* 172 Ill. 323, 50 N. E. 176; *Mason's Ex'rs v.
Trustees,* 27 N. J. Eq. 47; *Harrington v. Pier,* 105 Wis. 485,.
498, 82 N. W. 345.   As this court has declared, however,
precedents are of very slight utility in construing wills, for
the reason that trifling differences of circumstances, verbiage,.
or context may wholly change their significance, give a dif-
ferent color to the instrument, and necessitate an entirely dif-
ferent conclusion as to testator's intent.   *Swarthout v. Swart-
hout,* 111 Wis. 102, 108, 86 N. W. 558; *Becker v. Chester,*
115 Wis. 90, 91 N. W. 87, 97.

    In the will before us, with its codicils, we certainly find
more to indicate that testator at least supposed that he had
used words declaring full disposal of all his property than in
any of the cases cited in support of the conclusion of partial
intestacy, and we should do wrong to blindly follow those pre-
cedents, if we can read out of those words the meaning which
the testator attempted. to write into them.   One highly sig-
nificant paragraph of the codicil is the direction that "imme-
diately after my death my said homestead shall be sold, and
the *proceeds thereof disposed of according to the terms of my
last will and the provisions of my said first and second codi-*

*cils thereof.*"   The 'proceeds' are to be thus disposed of; not five-sixths thereof, leaving one-sixth to the law of descent or distribution.   Now if, within the four corners of the will and codicils in combination, exist directions as to where shall go all of those proceeds, we should struggle to ·find them. Within that instrument are named but five persons whom the testator directs shall receive any share of those proceeds. They are *Edward B., Benjamin C., Florence M., Charles M.,* and *Ruth E. Barber.*   Among these the expressed proportions are to *Charles M.* and *Ruth E.* one-twelfth shared, equally, and no more; to *Edward, Benjamin,* and *Florence,* in equal shares.     Is it not reasonably implied that the last three take all except one-twelfth,·or each eleven thirty-sixths ? But, insists the guardian *ad litem,* by the original will only one-fourth is given to each of these children, and the codicil contains no gift of anything more.   Such a construction, he argues, adds to the codicil what the testator did not put in it, namely, a gift of two thirty-sixths to each child.   This insistence embodies a fallacy, though it is found in some of the cases cited.   The will alone does not give one-fourth.   It never became effective to give anything.   The last will and testament of Edward Barber, deceased, consists not of one paper, but of three, and they, interacting on each other, speak his purpose as of the date of his death.   It by no means follows, because certain phraseology used by the testator in 1891, under circumstances then existing, and in the context then adopted, would have resulted in devise of only one-fourth of the homestead to each child, that the same phrase used in 1900 or 1901 under different circumstances, and in different context, does not declare a gift of a different proportion.   When the will finally took effect the written declaration of testator's purpose was that the entire proceeds of the homestead should be divided between the five persons above named, and that to two of them only one-twelfth should go.   We think the gift of eleven thirty-sixths to each

of the remaining three is as necessarily implied, and the intent to that effect as plainly declared, as if stated in *hæc verba*. A similar implication with reference to the shares in the proceeds of the residuum to be realized by the trustees under the fifth paragraph of the will perhaps cannot be supported by such absolute and direct demonstration as that applied to the proceeds of the homestead, but the meaning of the phraseology used as to one bears on the testator's purpose in using similar expression as to the other. If by the language used with reference to the entire proceeds of the homestead testator intended to declare his will that all of such proceeds except one-twelfth should go in equal shares to his three living children, and supposed he had declared it, there is great probability that he indulged in the same intent and supposition when, by retaining them in 1900, he used similar and quite equivalent words to express his wishes as to the eleven-twelfths of the proceeds of the residuum. That these words were adopted in 1900 by the testator as declaring a full and complete disposal of all such residuum, and as naming all the persons who were to share therein, is strongly indicated by the clause in the codicil already mentioned, providing for reversion of the share of either grandchild dying a minor, and the division of that share "according to the provisions of my last will and testament and the first and second codicils modifying the same." This evinces the testator's understanding that he had designated in those documents the persons among whom was to be divided all of the residuum of the estate, and by process of reasoning similar to that applied to the homestead we can ascertain the only possible proportions consistent with a complete division. The beneficiaries are: First, the stepdaughter, one-twelfth; second, the two grandchildren, one-twelfth, and no more; and, third, *Edward, Benjamin,* and *Florence,* equally. The implication seems plain that the last three must take ten-twelfths between them, or ten thirty-sixths each. These conclu-

sions accord with those of the circuit court upon this branch of the subject, as embodied in its judgment, and the assignments of error predicated upon the decision as to the respective proportions of the litigants cannot be sustained.

4. The guardian *ad litem* of the grandchildren also assails as erroneous that construction of the will and codicils which holds that the share of the grandchildren in the residuum of the estate is controlled by the fifth paragraph of the original will, vesting all such property in trustees, to care for and dispose of the same, and to pay over to the beneficiaries the proceeds of such management and disposal. Instead thereof he contends .that the codicil gives absolutely one-twelfth to the grandchildren, so that they take legal title to such share of each specific parcel of real estate at least, and not a mere beneficial interest in the proceeds. The policy and intent of the testator to vest the legal title to all this property in adult persons presumably familiar therewith, in order to facilitate its speedy sale and reduction to money, and avoid the delays and obstacles resulting from the necessity of consulting all the beneficiaries as to sale of each parcel and from the legal steps necessary to effect transfer of minor's interests, seems to us entirely plain. Such purpose would be thwarted by the construction suggested by the guardian *ad litem*. The trustees could make sale of only undivided eleven-twelfths without consent of those representing the grandchildren's interest. This, obviously, if it did not prevent sales, would impair the probability of obtaining full price for the fractional interest under the trustees' control. We find it impossible to believe in an intent to thus thwart and embarrass so well digested and so important a general plan as that set forth by the fifth paragraph of the original will, nor do we think the provisions of the codicil necessarily inconsistent therewith. The share of the father of these appellants, which might have passed to them but for the revocation, was merely a beneficial interest in the proceeds of the trustees' management, and the

purpose is obvious that the diminished share given by the codicil is intended to be conferred under the same restrictions. We are satisfied that the construction adopted by the circuit court was correct. This being so, these appellants can have no interest in the question whether or not the trust is valid as to the interests of those who are at once trustees and beneficiaries, nor in the inquiry as to whether there is any merger as to such interests.

Several suggestions are made by the guardian *ad litem* for certain modifications of the details of administration of this property, but they are all either so obviously perversive of the directions of the testator, or so entirely within the sound discretion of the trial court, that their discussion here may be dispensed with. Our conclusion is that the judgment of the circuit court is correct in all respects except with reference to the manner of sale of the homestead and disposition of the proceeds thereof.

*By the Court.*—The judgment of the circuit court is modified so as to declare it the duty of the executor, in his official capacity as such, to immediately sell the homestead of the deceased, and to pay the net proceeds thereof one-twelfth to such person as shall be appointed trustee for *Charles M.* and *Ruth E. Barber,* and eleven thirty-sixths thereof to each of testator's three children *Edward B., Benjamin C.,* and *Florence M. Barber;* and, as so modified, the judgment is affirmed. The taxable costs of the several parties in this court will be paid out of the estate.