KRONSHAGE and others, Executors, Appellants, vs. VARRELL and others, Respondents.

*November 19, 1903—January 12, 1904.*

*Wills: Bequest to charity: Class of beneficiaries: Charitable use.*

A testator, after reciting that "having in mind the *many catastrophies resulting from the action of the elements and the great suffering, distress, famine and want caused by the destruction of life and property by storms, floods, fires, and other accidental and natural causes,* and having a desire to do what I can to relieve the same," bequeathed to trustees a certain part of his estate to be invested and the income annually expended for the charitable purpose of "relieving the wants, distress, and suffering arising from *such* causes, and for the purpose of aiding and assisting . . . the victims of *such* accidents and catastrophies." The testator further recited that he placed no restriction upon the trustees as to the locality where said moneys should be expended, but enjoined them "to select subjects worthy of assistance" and to use their best judgment and

prudence in so handling and disbursing said moneys that the same "may be of the greatest possible benefit to suffering humanity." *Held:*

(1) That the bequest was not to charity generally, but defined a class of beneficiaries with such definiteness as would enable the court to determine whether any concrete expenditure was within the scheme of the testator.

(2) That the terms of the bequest did not vest in the trustees discretion to disburse the income to individuals subjected merely to some property loss from some of the defined causes, who were not in pecuniary need and not subjects of public charity, but their discretion was restricted to those subjects fairly entitled to relief in effectuating the testator's general motive and purpose as declared in the bequest.

Appeal from a judgment of the circuit court for Grant county: Geo. Clementson, Circuit Judge. *Reversed.*

Action brought by the executors for the construction of the will of John W. Varrell, deceased. That will disposed of an estate of $60,000 or more, directing that the same be all reduced to money, and that certain legacies be paid therefrom, leaving a residue of something more than $15,000. With reference to that he made the following provision by paragraph 22 :

"Having in mind the many catastrophes resulting from the actions of the elements and the great suffering, distress, famine and want caused by the destruction of life and property by storms, floods, fires, and other accidental and natural causes, and having a desire to do what I can to relieve the same, I therefore give and bequeath to *Th. Kronshage, Emil O. Spiegelberg,* and *Will H. Pittman,* in trust, all the rest, residue and remainder of my estate being cash, and direct that the same shall be invested by them as a trust fund, in such securities as they shall in their best judgment consider safe and remunerative, and that my said trustees shall annually expend the whole, or such part of the interest, revenues, and profits arising from the investment of such trust fund for the charitable purpose of relieving the wants, distress, and suffering arising from such causes, and for the purpose of aiding and assisting to such extent as lies within their power and as they may deem advisable the victims of

such accidents and catastrophes. I place no restriction upon my said trustees as to the locality where they shall expend such moneys or give such aid, but I hereby enjoin them to select subjects worthy of assistance, and that they use their best judgment and prudence in so handling and disbursing the money hereby confided to their management and control, so that the same may be of the greatest possible benefit to suffering humanity."

That was the only portion of the will assailed or questioned. The court held it void as too indefinite and general to enable the enforcement of any trust.

From judgment in accordance with that holding, the plaintiffs bring this appeal.

*Platt Whitman* and *W. E. Howe,* for the appellants, to the point that the language of the bequest was sufficiently definite as to the class of beneficiaries to be benefited, cited *Harris v. Allen,* 78 Ind. 100, 41 Am. Rep. 555; *Miller v. Porter,* 53 Pa. St. 292; *Jones v. Habersham,* 107 U. S. 174; *Rush Co. Comm'rs v. Dinwiddie,* 139 Ind. 128; *Leeds v. Shaw,* 82 Ky. 79; *Suter v. Hilliard,* 132 Mass. 412; *Bullard v. Chandler,* 149 Mass. 532; *Phillips v. Harrow,* 93 Iowa, 92; *Sweeney v. Sampson,* 5 Ind. 465; *Rotch v. Emerson,* 105 Mass. 431; *Doyle v. Whalen,* 87 Me. 414; *Quinn v. Shields,* 62 Iowa, 129.

For the respondents *McLimans* and others there was a brief by *Ed. M. Lowry, Bushnell & Moses* and *J. J. Blaine;* for the respondent *Eunice B. Varrell* and another there was a brief by *Fethers, Jeffris & Mouat;* and the cause was argued orally by *A. R. Bushnell, O. H. Fethers* and *M. O. Mouat.*

DODGE, J.    The degree of definiteness essential to the validity of any grant in trust for charity is a subject so recently treated at large, and as to which our attitude is so unambiguously declared in *Harrington v. Pier,* 105 Wis. 485, 82 N. W. 345, that we cannot justify extended review of

either its history or of the writings, of authors or judges upon it generally. This court has decided, disregarding the reasons which some others have deemed controlling, that there are inherent in our courts all the strictly judicial powers ever exercised by the Chancellor or the High Court of Chancery of England to find means to carry into effect a charitable purpose entertained by a testator or grantor; that such courts lack only the prerogative *cy pres* power enjoyed by the sovereign to apply all goods devised to any charitable purpose, to purposes never declared or even entertained by the donor, under certain circumstances, which prerogative power was in some degree exercised by the Chancellor by delegation from the sovereign. All that is necessary is that the devisor shall place his property in trust, and designate a charitable purpose of his own narrower than the field of charity generally. The courts can and will then see to it that a trustee is provided, if none be designated, and that means will be found to apply the property to the purpose, if no method be prescribed. They are limited to the defined purpose, and they must ascertain it from the words of the testator, but in ascertaining it may and will indulge the most liberal construction. *In re Donges's Estate,* 103 Wis. 497, 79 N. W. 786.

Those who assail the bequest now presented for construction do not seriously contend but that, if the testator has limited his donation to an ascertainable class of beneficiaries, it may be valid, if charitable; though perhaps they do not fully concede that position. The burden of their argument is addressed to the contention that no limits are prescribed; that the later sentences, in context with the whole, declare the will and purpose of the testator merely that his donation be expended, in the discretion of the trustees, for the benefit of suffering humanity. If that construction must be adopted, we should find it difficult, indeed, to avoid the conclusion that this will presented a donation to charity generally, with

no class selected or scheme prescribed by the donor, so that
it could be given practical effect only by the exercise of the
prerogative *cy pres* power to select both a class of bene-
ficiaries and a scheme of distribution of benefits. The ques-
tion, then, is one of construction. What did the testator
mean?

As has often been said, precedents are useful only slightly,
·or not at all, upon questions ·of construction. *Swarthout v.
Swarthout,* 111 Wis. 102, 108, 86 N. W. 558; *Lawrence v.
Barber,* 116 Wis. 294, 306, 93 N. W. 30. Arguments are
hardly more so. The reader of the words has no test but his
own understanding of them from which to judge of the mean-
ing intended to be conveyed by the writer. After applying
that test, we cannot bring ourselves to respondents' view of
the testator's meaning. We cannot ignore his declaration
that he is moved to make the bequest by the desire to relieve
to some extent against the "many catastrophes resulting from
the actions of the elements and the great suffering, distress,
famine, and want caused by the destruction of life and prop-
·erty by storms, floods, fires, and other accidental and natural
·causes." Nor can we pàss as meaningless his command that
the revenues of the trust fund be expended "for the chari-
table purpose of relieving the wants, distress, and suffering
arising from *such* causes," and assisting "the victims of *such*
accidents and catastrophes." Can it be doubted that the tes-
tator intended by the word "such" to limit the relief to suf-
ferers from some causes, accidents, or catastrophes, as dis-
tinguished from others not within his mental category? We
think not. Certainly he intended that some causes, some acci-
·dents and catastrophes, should be excluded from those whose
victims were to be the subjects of the annual expenditures
of the income of this fund. If so, then is it not possible for
the court to find some line of differentiation which was in
the mind of the testator, with sufficient certainty and definite-
ness to enable it to decide, in any concrete instance of ex-

penditure or proposed expenditure, whether it is authorized?
We are convinced that it is possible.

Obviously the purchase of food for the homeless victims of
the New Richmond cyclone would be justified. We think it
equally obvious that expenditure to aid the cure of consump-
tives or inebriates would be forbidden to the trustees. Whether
famine sufferers of a drouth-stricken region might be re-
lieved, would perhaps be a question of more doubt than either
of the other two, for they would not be victims of storm, fire,
or flood. The inquiry therefore would be whether drouth
was a "natural cause" so similar in character or results to
those specified that we must conclude the testator had it gen-
erically in mind in enlarging the field otherwise limited by
the three expressed causes. We must presume that he had in
mind a class of causes illustrated by the three named, though
not strictly confined to them, but similar enough to be within
the same general conception of possible suffering which he
desired to relieve. Such is the unavoidable force and signifi-
cance of the words used.

In the light of such a presumption it cannot be impossible
for a court to decide with reasonable certainty whether a
given cause was within or outside the mental conception of
the testator as declared in those words. We are persuaded
that a satisfactory conclusion could be reached in any of the
three foregoing illustrations, and that one at least would fall
outside of that conception, and would not authorize the ex-
penditure of any of the trust-fund income. If that be so,
and any specific use, clearly charitable, is excluded from the
field of expenditure limited by the will, then to a demonstra-
tion the donation is not to charity generally, and without
limit, and does not fail of the definiteness required for its
support. This view by no means ignores or nullifies the final
injunction that the trustees use their best judgment in
so handling and disbursing the fund that it "may be of

the greatest benefit to suffering humanity." 'Any—even a single—instance of relief accorded to any sufferer is a benefit to suffering humanity, and it is entirely consistent that a testator, after limiting either the field or the recipients of his beneficence, should enjoin upon its administrators diligence to so apply it within that field, or to those persons, as to accomplish the utmost relief to the sum of human suffering.

In this connection it is urged by appellants that the injunction "to select subjects [persons] worthy of assistance" is a limitation of itself, so that, even if the trustees were authorized to select them from the entire field of charity, the beneficiaries would still constitute a class outside of which would fall the unworthy, narrower therefore than charity generally, which a court might ascertain and protect against misapplication of the fund to others. Inasmuch as we have already found a limit to the testator's charitable purpose otherwise, we need not pass upon the force of this contention, which doubtless has support from some decided cases.

Another objection urged against this bequest is that the uses are not all charitable and public, but that disbursement of the income may be made by the trustees, in their discretion, to individuals subjected merely to some measure of property loss from some of the defined causes, who are not in pecuniary need, and not subjects of public charity; and that thus the entire bounty of the testator may be diverted to mere private beneficence and liberality, having no necessary element of public charity to arouse the power of a court of equity. If such be the authority vested in the trustees, the objection is weighty, and might well defeat the trust, even in those jurisdictions which acknowledge not only the broadest of judicial powers, but the prerogative *cy pres* power as well. *Morice v. Bishop of Durham,* 9 Ves. Jr. 399; *S. C.* with note, 5 Eng. Rul. Cas. 575; Tudor, Char. Trusts (3d Eng. ed.) 36; *Kent v. Dunham,* 142 Mass. 216, 7 N. E. 730.

Of course, insurance against mere losses is not necessarily charity. Here again, however, becomes significant the duty of courts to extend the most liberal construction reasonable to the words of a donor in order to find and sustain a valid charitable gift. Well within the limits of such reasonable construction we think is found declared the testator's intent that his bounty be distributed to the furnishing of aid and relief of such character and to so broad a class of so indefinite individuals that the general public are benefited by and interested in its due execution. The motive of the testator is declared to be to relieve "suffering, distress, famine, and want" arising from certain causes. He enjoins upon his trustees that they select "subjects worthy of assistance," so that the money be of benefit to "suffering" humanity. This injunction is obviously restrictive of the discretion otherwise vested in these trustees. We are satisfied that the testator meant by such restriction to confine his bounty to those subjects fairly entitled to relief in effectuating his general motive and purpose already declared; not necessarily to paupers, for the wealthy man, in common with the indigent, may, as the result of some of the suggested casualties, be in peril of starvation or of perishing from cold unless aid be promptly rendered, and may be equally a member of a class worthy of public and charitable relief during the emergency when money is useless in absence of opportunity to purchase the needed supplies. The word "worthy," adopted by the testator, is fairly expressive of this view. It is elastic in its meaning, according to the context in which used. It may—perhaps, more exactly, does—mean virtuous, or of good standing, but its restriction to such significance would be absurd in the present connection; would strain through a distorting filter this testator's bounty, in view of the situations which he evidently contemplated as likely to surround its distribution. Charity is defined by Lord CAMDEN as a "gift to a general public use which extends to the poor as well as

the rich." *Jones v. Williams,* Amb. 651; *Perin v. Carey,* 24 How. 465.

"The immediate persons benefited may be of a particular class, and yet if the use is public in the sense that it promotes the general welfare in some way, it has the essentials of a charity." *Harrington v. Pier,* 105 Wis. 521, 82 N. W. 357.

We are convinced that the testator intended, and by reasonable construction of his words has declared, that this fund be applied and confined to such a use. Our conclusion is that neither of the objections raised to the bequest in question is fatal, but that it is valid, and the residue of the estate should be distributed to the trustees named, upon the trusts declared by the residuary paragraph above quoted.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment decreeing the will presented valid, inclusive of the bequest contained in the twenty-second paragraph thereof, the taxable costs of both parties in this court to be paid out of the estate.

CASSODAY, C. J., dissents.